T.C. Memo. 2003-37

UNITED STATES TAX COURT

ALLEN CHARLES SCHENKEL, Petitioner $\underline{v}$.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 10855-01L.            Filed February 20, 2003.

Allen Charles Schenkel, pro se.

Lisa M. Oshiro, for respondent.

MEMORANDUM OPINION

VASQUEZ, Judge:  This case is before the Court on
respondent's motion for summary judgment.

Rule 121(a)[1] provides that either party may move for summary
judgment upon all or any part of the legal issues in controversy.
Full or partial summary judgment may be granted only if it is

_____

    [1] Unless otherwise indicated, all Rule references are to
the Tax Court Rules of Practice and Procedure, and all section
references are to the Internal Revenue Code.

demonstrated that no genuine issue exists as to any material fact, and a decision may be rendered as a matter of law. Rule 121(b); Sundstrand Corp. v. Commissioner, 98 T.C. 518, 520 (1992), affd. 17 F.3d 965 (7th Cir. 1994).

We conclude that there is no genuine issue as to any material fact and that a decision may be rendered as a matter of law.

Background

On September 1, 2000, respondent filed a Notice of Federal Tax Lien regarding petitioner's income tax liabilities for 1989, 1990, 1991, 1992, 1993, and 1994 with the county auditor of Pierce County, Tacoma, Washington (tax lien). The tax lien listed the following amounts owed (as of August 27, 2000):

| Tax Period | Amount Owed |
|---|---|
| 1989 | $2,140.33 |
| 1990 | 1,947.40 |
| 1991 | 2,135.35 |
| 1992 | 1,830.55 |
| 1993 | 893.56 |
| 1994 | 2,036.89 |

On September 7, 2000, respondent issued to petitioner a Notice of Federal Tax Lien Filing and Your Right to a Hearing Under IRC 6320 regarding his income tax liabilities for 1989, 1990, 1991, 1992, 1993, and 1994 (hearing notice).

On September 19, 2000, petitioner submitted a Form 12153, Request for a Collection Due Process Hearing, regarding his 1989, 1990, 1991, 1992, 1993, and 1994 tax years (hearing request).

Petitioner explained his disagreement with the hearing notice as follows:  "I have been paying my back taxes with my yearly tax return and have never had an opportunity to have a settlement agreement or meeting with the IRS.  I don't feel a lien is necessary."

On November 17, 2000, respondent assigned Appeals Officer Malcolm Otterson to petitioner's hearing request.

On December 19, 2000, Appeals Officer Otterson sent petitioner a letter scheduling an Appeals Office hearing (hearing) for January 17, 2001, at 10 a.m.

On January 16, 2001, petitioner called Appeals Officer Otterson and asked to reschedule the hearing for Friday at the same time.  Appeals Officer Otterson agreed.

On Friday, January 19, 2001, petitioner did not appear for the hearing.  Appeals Officer Otterson called petitioner.  Petitioner thought the hearing was scheduled for January 26, 2001--the next Friday.  Appeals Officer Otterson rescheduled the hearing for January 26, 2001.

On January 26, 2001, Appeals Officer Otterson reviewed the administrative file before the hearing.  As of January 26, 2001, petitioner's outstanding balance, including penalties and interest, for 1989, 1990, 1991, 1992, 1993, and 1994 totaled $18,390.96.  On that same day, petitioner attended the hearing with Appeals Officer Otterson.  Petitioner stated that he wanted to pay the tax without paying any interest or penalties.  Appeals

Officer Otterson gave petitioner a Form 433-A, Collection Information Statement for Individuals, and a Form 656, Offer in Compromise.

On February 23, 2001, petitioner submitted an Offer in Compromise to respondent for 1988 through 1994 (first OIC). Under the reason for submission of the offer, petitioner checked both boxes: "Doubt as to Liability" and "Doubt as to Collectibility". Under the box for doubt as to liability, the form stated that the taxpayer was required to include a detailed explanation of the reasons why he believed he did not owe the tax. Petitioner, however, failed to do so. Petitioner checked the box for "Short Term Deferred Payment Offer (offered amount paid in more than 90 days but within 24 months)". He listed the monthly payment as $200 and the monthly payment date as "deducted from paycheck". Petitioner left the line "Balance will be fully paid on" blank.

On March 5, 2001, Appeals Officer Otterson wrote to petitioner to inform him that the Form 656 he had provided to petitioner was out of date and enclosed a current Form 656. Appeals Officer Otterson also asked petitioner for an explanation of the $200 figure petitioner offered.

On April 2, 2001, petitioner submitted the new Form 656 (second OIC). In the second OIC, petitioner listed the tax years as 1989 through 1994. Petitioner did not check any of the boxes

under the reason for submission of the offer--doubt as to liability, doubt as to collectibility, or effective tax administration. Petitioner again checked the box for "Short Term Deferred Payment Offer (offered amount paid in more than 90 days but within 24 months)". He listed the monthly payment as $200, the monthly payment date as "30th Deduction From Pay", and the date the offered amount will be paid in full as "6/2003".

Around this time, respondent received a completed Form 433-A from petitioner. Petitioner listed a balance in his bank accounts--including a checking account, a savings account, a section 401(k) account, and a mutual fund--of $11,178.49. Petitioner also listed two cars and two boats, which he owned outright, as assets. Petitioner listed his monthly income to be $2,881 and his total monthly living expenses to be $2,535--$460 for national standard expenses,[2] $960 for housing and utilities, $400 for transportation, $660 for income and FICA taxes, $42 for union dues, and $13 for "emply com fund".

Appeals Officer Otterson reviewed the second OIC based on the financial information submitted by petitioner. Appeals Officer Otterson, however, calculated petitioner's total allowable monthly living expenses to be $2,409--$554 for national

---

[2] National standard expenses are for clothing and clothing services, food, housekeeping supplies, personal care products and services, and miscellaneous. See Schulman v. Commissioner, T.C. Memo. 2002-129 n.6.

standard expenses, $933 for housing costs based on a family of one in Pierce County, $292 for transportation, $575 for taxes,[3] and $55 for union dues, etc.  Appeals Officer Otterson concluded that petitioner had the ability to pay $472 per month--the net difference between petitioner's monthly income and monthly allowable expenses--toward his outstanding 1989, 1990, 1991, 1992, 1993, and 1994 tax liabilities.  Appeals Officer Otterson also noted the net value of the assets petitioner listed on the Form 433-A.

---

[3]  The Appeals officer arrived at petitioner's monthly tax figure by (1) annualizing the monthly income figure provided by petitioner, (2) applying the year 2000 income tax rates and FICA tax rate to this amount, and then (3) dividing the total amount of tax by 12:

Petitioner's annual income equaled $34,572:  $2,881 (the monthly income figure provided by petitioner) x 12.

Petitioner's annual FICA tax equaled $2,645:  $34,572 x 7.65%.  Sec. 3101(a) and (b).

The Appeals officer subtracted the standard deduction ($2,800 for 2000) and a personal exemption ($4,400 for 2000) from petitioner's annual income figure to arrive at petitioner's annual taxable income of $27,372:  $34,572 - $2,800 - $4,400. Secs. 63, 151.  Per the year 2000 tax table, petitioner's annual income tax equaled $4,253.  Sec. 1.

Petitioner's total annual FICA and income taxes equaled $6,898:  $2,645 (FICA) + $4,253 (income tax).  Thus, petitioner's monthly tax equaled $575:  $6,898 ÷ 12.

Based on these results, Appeals Officer Otterson was unable to accept petitioner's second OIC because petitioner could pay his full tax liability within the period of limitations for collection. Appeals Officer Otterson advised petitioner that respondent would be able to accept an installment agreement that would pay off petitioner's tax liability and to contact him during the week of May 14, 2001, if petitioner were interested in discussing this possibility. Petitioner never contacted Appeals Officer Otterson regarding an installment agreement.

On July 25, 2001, respondent issued a Notice of Determination Concerning Collection Action(s) Under Section 6320 and/or 6330 to petitioner regarding his 1989, 1990, 1991, 1992, 1993, and 1994 tax years (notice of determination). In the notice of determination, respondent determined that the Federal tax lien should remain in place. The notice of determination further explained:

> The taxpayer prepared an offer in compromise form which was analyzed by Appeals * * * . It was determined that the full liability could be collected within the collection statute. The taxpayer was given the opportunity to use an installment agreement but he did not respond. * * * The taxpayer has not responded to the only available voluntary payment option. This was the installment agreement. The Notice of Federal Tax Lien should remain in place.

On August 20, 2001, petitioner timely filed an imperfect petition for lien or levy action under Code section 6320(c) or 6330(d) seeking review of respondent's determination to proceed with collection of petitioner's 1989, 1990, 1991, 1992, 1993, and

1994 tax liabilities. On August 30, 2001, petitioner filed an amended petition for lien or levy action under Code section 6320(c) or 6330(d).

On November 20, 2002, respondent filed a motion for summary judgment. Attached as exhibits to the motion for summary judgment are three different kinds of transcripts of account-- dated October 12, 2000, November 16, 2000, and January 26, 2001-- and Forms 4340, Certificate of Assessments, Payments and Other Specified Matters--dated July 12, 2002--for petitioner's 1989, 1990, 1991, 1992, 1993, and 1994 tax years.

On November 21, 2002, the Court ordered petitioner to file any objection to respondent's motion for summary judgment on or before December 12, 2002. On December 17, 2002, petitioner filed a response to respondent's motion for summary judgment (response).

Discussion

Section 6320 provides that the Secretary shall furnish the person described in section 6321 with written notice (i.e., the hearing notice) of the filing of a notice of lien under section 6323. The hearing notice is to be furnished not more than 5 business days after the filing of the notice of lien. Sec. 6320(a)(2). Section 6320 further provides that the taxpayer may request administrative review of the matter (in the form of a hearing) within the 30-day period beginning on the day after the 5-day period described above. The hearing generally shall be

conducted consistent with the procedures set forth in section 6330(c), (d), and (e). Sec. 6320(c).

Petitioner argues in his response that he made it clear to Appeals Officer Otterson that he was willing to pay the amount of "tax" he owed but not the penalties and interest. Petitioner's allegations of error are that respondent did not provide him a summary of the amounts of the taxes he owed and did not accept the second OIC. Petitioner does not appear to argue the issue of "doubt as to liability" with regard to the second OIC.[4] In the second OIC, petitioner did not check the box for doubt as to liability. In his response, petitioner states that he is willing to pay the tax without penalties or interest. Furthermore, we note that although petitioner checked the box for doubt as to liability on the first OIC, he failed to include a detailed explanation of the reasons why he believed he did not owe the tax. Where the validity of the underlying tax liability is not properly in issue, we review the Commissioner's determination for

---

[4] We note that petitioner received statutory notices of deficiency for 1989, 1990, 1991, and 1992, that he failed to petition the Court with respect to those years, and that his assessed tax liability for 1993 and 1994 was based upon tax returns for 1993 and 1994 that he filed on November 28, 1999. Accordingly, petitioner cannot contest the underlying liabilities for 1989, 1990, 1991, and 1992. Sec. 6330(c)(2)(B); Sego v. Commissioner, 114 T.C. 604, 610-611 (2000); Goza v. Commissioner, 114 T.C. 176, 182-183 (2000). Furthermore, petitioner has admitted his liability for 1993 and 1994. See Lare v. Commissioner, 62 T.C. 739, 750 (1974), affd. without published opinion 521 F.2d 1399 (3d Cir. 1975).

abuse of discretion. Sego v. Commissioner, 114 T.C. 604, 610 (2000).

At the hearing, the Commissioner is not required to provide the taxpayer with any form listing the amount the taxpayer owes. Nestor v. Commissioner, 118 T.C. 162, 166-167 (2002). In any event, petitioner has received copies of his transcript of account and Forms 4340 for each of the years in issue. Villwock v. Commissioner, T.C. Memo. 2002-235 n.4. Accordingly, we conclude that respondent did not abuse his discretion by not providing this information to petitioner at the hearing.

Respondent reviewed the financial information provided to him by petitioner. The Appeals officer followed prescribed guidelines to determine whether the second OIC was adequate and should be accepted. Sec. 7122(c)(1). The Appeals officer allowed petitioner national standard expenses in accordance with section 7122(c)(2). In accordance with the regulations, respondent prepared a monthly income and allowable expense analysis, based on all of the information provided by petitioner, and determined that petitioner could pay $472 per month toward petitioner's outstanding 1989, 1990, 1991, 1992, 1993, and 1994 tax liabilities. See sec. 301.7122-1T(b)(3), Temporary Proced. & Admin. Regs., 64 Fed. Reg. 39020 (July 21, 1999). We have reviewed those computations, and we find them to be reasonable.[5]

---

[5] We note that under petitioner's own figures $346, and not $200, per month was available to be applied to petitioner's
(continued...)

See <u>Schulman v. Commissioner</u>, T.C. Memo. 2002-129.

Appeals Officer Otterson offered petitioner an alternative to the second OIC.  Appeals Officer Otterson advised petitioner that respondent would be able to accept an installment agreement that would pay off petitioner's tax liability.  Appeals Officer Otterson told petitioner to let him know if petitioner was interested in discussing this possibility.  Petitioner, however, did not contact Appeals Officer Otterson regarding an installment agreement.

Respondent's determination was based on a financial analysis of petitioner's income, assets, and allowable expenses and his ability to pay.  See <u>id.</u>  Petitioner offered to pay less than $5,000 on a liability that as of January 26, <u>2001</u>, was in excess of $18,000.[6]  Respondent gave due consideration to collection alternatives.  See <u>id.</u>  We conclude that respondent's determination was reasonable.

Petitioner has failed to raise a spousal defense or make a valid challenge to the appropriateness of respondent's intended collection action.  These issues are now deemed conceded.  See

---

[5](...continued)
outstanding tax liabilities.

[6]  Furthermore, we note that the amount petitioner offered to pay also is <u>thousands</u> of dollars less than the total amount of petitioner's assessed tax liabilities, <u>excluding penalties and interest</u>, listed on the Forms 4340.

Rule 331(b)(4).  Accordingly, we conclude that respondent did not abuse his discretion, and we sustain respondent's determination.

To reflect the foregoing,

<u>An appropriate order and decision will be entered</u>.